**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| ROBERT CLARK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AUTUMN TRANSPORT, INC. and ESSAR LEASING CORP.,<br><br>Defendants. | Case No. |

## CLASS AND COLLECTIVE ACTION COMPLAINT

## INTRODUCTION

1. This is an action brought on behalf of individuals who have worked as delivery drivers for Autumn Transport, Inc. ("Autumn"), challenging the unlawful misclassification of them as independent contractors instead of employees. The above-named Plaintiff asserts claims under the Fair Labor Standards Act ("FLSA") on behalf of himself and all others similarly situated who have performed work for Autumn in the United States, seeking remedies for statutory violations resulting from this misclassification.

2. Plaintiff also asserts claims pursuant to Rule 23 on behalf of all drivers who worked for Autumn in Minnesota during the past three years for violations of Minnesota state law, including the Minnesota Fair Labor Standards Act ("MFLSA") and Minn. Stat.

§ 181.79.

3. Plaintiff also brings—on his own behalf and on behalf of all former delivery drivers engaged by Defendant Autumn who leased vehicles from Defendant ESSAR Leasing Corp. ("ESSAR"), who were prevented from continuing in their installment payments after ceasing to work for Autumn, and who were thus required to return their vehicles at any time beginning six years prior to filing this Complaint—claims for breach of contract, unjust enrichment, negligent misrepresentation, fraudulent inducement, as well as for violations of the Minnesota Consumer Fraud Act and the Minnesota Deceptive Trade Practices Act.

4. When he began work for Autumn, Plaintiff did not have his own truck, and, in March or April of 2024, he—like other Autumn Delivery drivers—entered into a lease-to-own contract with ESSAR, which shares the same business address and corporate leadership as Autumn, under which he made weekly payments toward the truck. This contract did not state that Plaintiff needed to continue driving with Autumn in order to purchase the truck. However, when Plaintiff stopped working for Autumn, ESSAR refused to allow him to continue making weekly payments on the truck and required him to immediately pay the entire balance of the truck lease or to return the truck. Plaintiff therefore had to return the truck for which he had paid thousands of dollars to ESSAR. ESSAR's actions in breaching the agreement and failing to disclose to Plaintiff the fact that he would only be able to use the truck to make deliveries for Autumn constituted breach of contract, negligent misrepresentation, and fraudulent inducement. Moreover, by retaining initial deposit payments and collecting weekly payments for the truck, and then forcing

Plaintiff to return the truck, ESSAR was unjustly enriched. Additionally, both ESSAR and Autumn's conduct with respect to Plaintiff's truck lease violates the Minnesota Consumer Fraud Act and the Minnesota Deceptive Trade Practices Act.

## PARTIES

5. Plaintiff Robert Clark is an adult resident of Bronston, Kentucky.

6. From approximately April of 2024 to January of 2025, Plaintiff Clark delivered goods such as paint, vegetable oil, and other products on behalf of and at the direction of Autumn in Minnesota and across the United States. Clark was classified by Autumn as an independent contractor.

7. During the relevant time, however, Clark was Autumn's employee as that term is defined in the FLSA, *see* 29 U.S.C. § 203(d), and for purposes of the Minnesota wage laws.

8. Plaintiff's Consent Form is attached hereto as Exhibit 1.

9. Plaintiff brings this action individually and on behalf of a proposed FLSA collective comprised of all similarly situated individuals who performed delivery work for Autumn at any time beginning three years prior to filing this Complaint and who were classified by Autumn as independent contractors.

10. Plaintiff also brings this case as a class action on behalf of all individuals who performed delivery work for Autumn in Minnesota at any time beginning three years prior to filing this Complaint and who were classified by Autumn as independent contractors, pursuant to Federal Rule of Civil Procedure 23.

11. Plaintiff also brings this action on behalf of all individuals engaged by Defendant Autumn who leased vehicles from Defendant ESSAR, who were prevented from continuing in their installment payments after ceasing to work for Autumn, and who were thus required to return their vehicles at any time beginning six years prior to filing this Complaint, pursuant to Federal Rule of Civil Procedure 23.

12. Defendant Autumn is a for-profit corporate entity, organized in Minnesota, with its principal place of business in Woodbury, Minnesota. Defendant Autumn conducts business throughout the state of Minnesota, contracting to make deliveries in Minnesota and across the United States.

13. Defendant ESSAR is a for-profit corporate entity, organized in Minnesota, with its principal place of business in Woodbury, Minnesota. Defendant ESSAR conducts business throughout the state of Minnesota, contracting to lease vehicles to drivers performing deliveries for Autumn.

14. According to online records maintained by the Office of the Minnesota Secretary of State, ESSAR shares the same business address and Chief Executive Officer as Autumn.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

16. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state and federal claims are so

related that they form part of the same case or controversy.

17. This Court further has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), since there is diversity between the Parties and since the amount in controversy exceeds $75,000.

18. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), since upon information and belief there are more than 100 members of the proposed classes and the amount in controversy exceeds $5 million.

19. Venue is proper in the United States District Court, District of Minnesota, pursuant to 28 U.S.C. § 1391, because both Defendants are incorporated in Minnesota and conduct business in this District, and because the unlawful practices described herein were committed in this District.

## FLSA COVERAGE

20. At all times mentioned, Defendant Autumn has individually and jointly been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21. At all times mentioned, Defendant Autumn has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

22. At all times hereinafter mentioned, Defendant Autumn has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and

continues to have an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level, which are separately stated).

23. At all times hereinafter mentioned, Plaintiff and the putative collective members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

24. Specifically, Plaintiff and the putative collective members were (or are) non-exempt employees who worked as delivery drivers for Defendant Autumn. Further, Plaintiff and the putative collective members have handled materials and goods that have been moved or produced in interstate commerce, which Defendant Autumn purchased or used in its business operation.

## FACTS

25. Plaintiff worked as a delivery driver for Autumn during the statutory period.

26. Autumn has contracted with Plaintiff and others (collectively, "Delivery Drivers") to perform delivery services of products in Minnesota and across the United States.

27. Autumn has classified Plaintiff and all other Delivery Drivers as independent contractors.

28. Autumn advertises pneumatics, liquid tanks, hoppers, and end dump delivery services on its website.

29. Autumn contracts with corporate customers to deliver goods throughout Minnesota and the United States.

30. Thus, the delivery of goods that is performed by Delivery Drivers is a critical

and integral part of Autumn's business, and the deliveries are therefore controlled by Autumn.

31. Plaintiff and other Delivery Drivers stay in regular contact with dispatchers, communicating with them each time a Delivery Driver picks up a load and drops off a load. If any problem arises—such as if a Delivery Driver is running late, or if a customer attempts to cancel a delivery, the Delivery Driver must contact Autumn's dispatchers and ask how to resolve the issue.

32. Delivery Drivers remain logged into Autumn's App, which lists their delivery assignments and tracks their progress.

33. Delivery Drivers are assigned loads via a delivery application provided by Autumn. Delivery Drivers pick up the assigned loads, deliver them to the required locations, and then mark the delivery as complete. They then proceed to the next order.

34. Upon information and belief, if Delivery Drivers reject their assigned loads, Autumn will stop sending them assignments and they will be effectively terminated. Plaintiff was effectively terminated after rejecting an assigned load.

35. Plaintiff and other Delivery Drivers worked approximately six or seven days per week making deliveries for Autumn. Plaintiff typically worked sixty to seventy hours per week.

36. Autumn determines Delivery Drivers' rate of pay and retains the authority to terminate any Delivery Drivers whose work it deems unsatisfactory.

37. Delivery Drivers' contracts purport to pay Plaintiff and the putative collective and class members set percentages of the "Line Haul Revenue" that Autumn

negotiates directly with its customers.

38. Plaintiff and Delivery Drivers do not negotiate with customers regarding the delivery fees. Those amounts are determined by Autumn.

39. Pursuant to their contracts, Delivery Drivers are not permitted to perform any work deemed “competitive” to Autumn.

40. Delivery Drivers, including Plaintiff, frequently are not paid for all hours worked at an hourly rate at or in excess of the minimum wage rates established by the FLSA, 29 U.S.C. § 206, and Minnesota law. In many weeks, the payment that Delivery Drivers, including Plaintiff, receive for performing delivery services, after accounting for their out-of-pocket work-related expenses and divided by the number of hours the drivers had performed those services, results in an hourly rate of pay below the relevant federal minimum wage.

41. For example, upon information and belief, Plaintiff was paid an hourly rate below the Minnesota minimum wage for the weeks beginning on May 12, 2024; June 2, 2024; June 30, 2024; July 7, 2024; August 11, 2024; and September 29, 2024. Likewise, upon information and belief, Plaintiff was paid an hourly rate below the federal minimum wage for the weeks beginning on June 30, 2024, and July 7, 2024.

42. By misclassifying Delivery Drivers as independent contractors, Autumn forces all drivers to bear all of the costs of performing delivery services, including, but not limited to, gasoline, tolls, vehicle maintenance, and insurance. Upon information and belief, when these expenses are taken into account, Autumn fails to pay an hourly rate of pay to drivers, including Plaintiff, equal to or greater than the applicable federal minimum

wage. 29 C.F.R. § 531.35.

43. Autumn's misclassification of Plaintiff and the putative collective members as independent contractors and the additional violations of the FLSA described herein were willful and undertaken in bad faith.

44. Plaintiff, and other Delivery Drivers, contract with Defendant ESSAR as part of a "lease-to-purchase" agreement to lease vehicles used to perform services for Autumn.

45. Autumn advertises on its website that it has "[a]n industry-leading lease purchase ownership program." It further advertises: "Great terms, no balloon payment, low weekly payments, and your choice of truck make our lease purchase ownership program a true industry leader."

46. Delivery Drivers, including Plaintiff, contract with ESSAR for the lease of a truck used to perform deliveries for Autumn.

47. The terms of the lease agreement include weekly payments in exchange for leasing the vehicle, with a purchase option after the lease term ends.

48. Plaintiff, and upon information and belief other Delivery Drivers that worked for Autumn and signed lease agreements with ESSAR, were unlawfully not permitted to continue to perform under their ESSAR lease agreements upon termination of their work for Autumn and were required to either pay the full cost of the truck or return the truck without reimbursement.

49. Defendants also caused a likelihood of confusion or misunderstanding as to ESSAR's affiliation, connection, or association with Autumn by failing to appropriately disclose the nature of ESSAR and Autumn's affiliation, connection, or association.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

50. Plaintiff asserts claims under the FLSA on behalf of himself and all similarly situated drivers in the United States who performed delivery work for Autumn at any time beginning three years prior to filing this Complaint and who were classified by Autumn as independent contractors.

51. Plaintiff's FLSA claims should proceed as a collective action because Plaintiff and the putative collective members worked pursuant to the common misclassification scheme described above under which Autumn did not pay drivers at least the minimum wage for all hours worked, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

52. Plaintiff brings Counts Two through Three individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All current or former Delivery Drivers who were engaged by Defendant Autumn at any time beginning three years prior to filing this Complaint, and who were classified as independent contractors.

53. The persons in the proposed Rule 23 Class are so numerous that joinder of all of the proposed Rule 23 Class members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, Autumn has employed at least 100 Delivery Drivers during the class period who have been similarly affected by Autumn's unlawful practices and policies.

54. There are questions of law and fact common to the proposed Rule 23 Class

that predominate over any questions solely affecting individual members of the proposed Rule 23 Class, including but not limited to:

a. Whether Autumn misclassified Delivery Drivers as independent contractors when they are in fact employees entitled to the protections of the Minnesota wage laws;

b. Whether Autumn violated Minn. Stat. § 177.21, *et seq.* (and accompanying regulations) by failing to pay employees minimum wage;

c. Whether Autumn violated Minn. Stat. § 181.79 by making unlawful deductions from employees' wages; and

d. the proper measure of compensatory damages, liquidated damages, and civil penalties.

55. Plaintiff's claims are typical of those of the proposed Rule 23 Class. Plaintiff, like other members of the proposed Rule 23 Class, was subjected to Autumn's unlawful policies and practices, resulting in a violation of the MFLSA. Members of the proposed Rule 23 Class have sustained similar injuries as a result of Defendant's actions.

56. Plaintiff will fairly and adequately protect the interests of the Rule 23 Class. Plaintiff has retained counsel experienced in complex wage-and-hour class-action litigation.

57. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy. In the context of wage-and-hour litigation, individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits against large defendants. Class litigation is also superior because it will preclude

the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendant's policies and practices. There do not appear to be any difficulties in managing this class action.

58. Plaintiff also brings Counts Four through Nine individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All former Delivery Drivers engaged by Defendant Autumn who leased vehicles from Defendant ESSAR, who were prevented from continuing in their installment payments after ceasing to work for Autumn, and who were thus required to return their vehicles at any time beginning six years prior to filing this Complaint.

59. The persons in the proposed Rule 23 Class are so numerous that joinder of all of the proposed Rule 23 Class members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, Defendant Autumn has employed at least 100 Delivery Drivers who leased vehicles from ESSAR and were prevented from continuing to perform on their lease agreements following the termination of their services for Defendant Autumn during the class period.

60. There are questions of law and fact common to the proposed Rule 23 Class that predominate over any questions solely affecting individual members of the proposed Rule 23 Class, including but not limited to:

a. Whether Defendants' actions constituted breach of contract, negligent misrepresentation, or fraudulent inducement by preventing drivers from performing on their lease agreements following the termination of their services for Autumn;

b. Whether Defendants were unjustly enriched by preventing drivers from performing on their lease agreements and requiring the return of vehicles without reimbursing drivers;

c. Whether Defendants violated Minn. Stat. § 325D.43, *et seq.*, by engaging in deceptive trade practices as defined by the statute; and

d. Whether Defendants violated Minn. Stat. § 325F.68, *et seq.*, by engaging in conduct prohibited by the statute; and

e. the proper measure of compensatory damages, liquidated damages, and civil penalties.

61. Plaintiff's claims are typical of those of the proposed Rule 23 Class. Plaintiff, like other members of the proposed Rule 23 Class, was subjected to Defendants' unlawful policies and practices, resulting in violations of Defendants' contractual and statutory obligations. Members of the proposed Rule 23 Class have sustained similar injuries as a result of Defendants' actions.

62. Plaintiff will fairly and adequately protect the interests of the Rule 23 Class. He has retained counsel experienced in complex commercial litigation.

63. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy. In the context of this litigation, individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits against large defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' policies and practices. There do not appear to be any difficulties in managing

this class action.

**COUNT I**
**FAIR LABOR STANDARDS ACT–FAILURE TO PAY MINIMUM WAGES (INDIVIDUAL AND COLLECTIVE ACTION)**

64. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

65. Defendant Autumn's willful conduct in failing to reimburse Delivery Drivers for out-of-pocket expenses and failing to ensure that its Delivery Drivers receive the federal minimum wage violates the FLSA, 29 U.S.C. § 201, *et seq.* This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**MFLSA MINIMUM WAGE, MINN. STAT. § 177.21, *et seq.***
**(INDIVIDUAL AND CLASS ACTION)**

66. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

67. Plaintiff and members of the proposed Rule 23 Class were or are employees of Defendant Autumn within the meaning of Minn. Stat. § 177.23, subd. 7.

68. Defendant Autumn was the employer of Plaintiff and members of the proposed Rule 23 Class within the meaning of Minn. Stat. § 177.23, subd. 6.

69. Defendant Autumn is a large employer within the meaning of Minn. Stat. § 177.24, subd. 1(a)(1).

70. Defendant Autumn was prohibited from requiring Plaintiff and members of the proposed Rule 23 Class to purchase "consumable supplies required in the course of . . . employment" where the cost of those supplies would reduce their wages below the minimum wage. Minn. Stat. § 177.24, subd. 4.

71. Plaintiff and members of the proposed Rule 23 Class were entitled to compensation at the statutory minimum wage for all hours worked including travel time between job sites. Minn. R. 5200.0120, subd. 1, 2.

72. Defendant Autumn has violated Minn. Stat. § 177.24 by failing to pay Plaintiff and members of the proposed Rule 23 Class wages at the applicable statutory minimum wage rate for all hours worked.

73. Defendant Autumn's actions were willful and not the result of mistake or inadvertence. *See* Minn. Stat. § 541.07(5).

74. As a direct and proximate result of Defendant Autumn's unlawful conduct, Plaintiff and members of the proposed Rule 23 Class have suffered damages in an amount to be determined at trial.

75. Plaintiff and members of the proposed Rule 23 Class seek damages in the amount of back pay at the statutorily guaranteed minimum wage for all hours worked, liquidated damages pursuant to Minn. Stat. § 177.27, subd. 8, reasonable attorneys' fees and costs for this action, pre- and post-judgment interest, injunctive relief, and such other legal and equitable relief as the Court deems proper.

**COUNT III**
**UNLAWFUL DEDUCTIONS FROM WAGES**
**MINN. STAT. § 181.79**
**(INDIVIDUAL AND CLASS ACTION)**

76. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

77. Plaintiff and members of the proposed Rule 23 Class were or are employees of Defendant Autumn within the meaning of Minn. Stat. § 181.79.

78. Defendant Autumn was the employer of Plaintiff and members of the proposed Rule 23 Class within the meaning of Minn. Stat. § 181.79.

79. Defendant Autumn was prohibited from making any deductions, directly or indirectly, from the wages due or earned by Plaintiff and members of the proposed Rule 23 Class without written, voluntary authorization from Plaintiff and members of the proposed Rule 23 Class "after the loss has occurred or the claimed indebtedness has arisen" that sets forth "the amount to be deducted from the employee's wages during each pay period," "or unless the employee is held liable in a court of competent jurisdiction for the loss or indebtedness."

80. Nevertheless, Defendant Autumn deducted business expenses from the wages of Plaintiff and members of the proposed Rule 23 Class without the statutorily required authorization and without a finding of liability in a court of competent jurisdiction.

81. Defendant Autumn has violated Minn. Stat. § 181.79 by making unlawful deductions from the wages of Plaintiff and members of the proposed Rule 23 Class.

82. As a direct and proximate result of Defendant Autumn's unlawful conduct,

Plaintiff and members of the proposed Rule 23 Class have suffered damages in an amount to be determined at trial.

83. Plaintiff and members of the proposed Rule 23 Class seek damages for twice the amount of the deductions or credits unlawfully taken, reasonable attorneys' fees and costs for this action, pre- and post-judgment interest, injunctive relief, and such other legal and equitable relief as the Court deems proper.

**COUNT IV**
**BREACH OF CONTRACT**
**(INDIVIDUAL AND CLASS ACTION)**

84. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

85. Defendant ESSAR breached its lease agreements with Plaintiff and members of the proposed Class by refusing their performance under the lease agreements upon termination of their services for Autumn.

86. Specifically, ESSAR breached the lease agreements by refusing to allow Plaintiff and members of the proposed Class to continue to make payments under the lease agreement and by requiring them to pay one lump sum or return the leased vehicles.

**COUNT V**
**NEGLIGENT MISREPRESENTATION**
**(INDIVIDUAL AND CLASS ACTION)**

87. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

88. ESSAR and Autumn both made false representations of a material fact to

Plaintiff by failing to inform Plaintiff and members of the proposed Class, when they entered into the lease-to-own agreement with ESSAR, that they would not own the truck outright, but instead would only be able to use the truck to make deliveries for Autumn.

89. As a result of Defendants' misrepresentations, Plaintiff and members of the proposed Class were led to believe that, if they continued to make payments toward the trucks, they would be able to use the trucks as they chose and would eventually own the trucks outright.

90. Only when Plaintiff and members of the proposed Class stopped working for Autumn were they informed that they could only use the trucks to make deliveries for Autumn and would be required to pay the entire balance on each truck immediately (rather than in the agreed-to weekly installments) or else be required to immediately return the trucks.

91. Defendants intended to deceive Plaintiff and members of the proposed Class so that ESSAR could retain not only their deposits and weekly payments, but also the truck itself.

92. Plaintiff and members of the proposed Class have suffered damages including, but not limited to, the initial deposit payments and amounts of the weekly payments they made toward the trucks under the lease-to-own agreement.

**COUNT VI**
**FRAUDULENT INDUCEMENT**
**(INDIVIDUAL AND CLASS ACTION)**

93. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

94. Defendants Autumn and ESSAR made false representations of a material fact to Plaintiff and members of the proposed Class by failing to inform them, when they entered into the lease-to-own agreement with ESSAR, that they would not own the trucks outright, but instead would only be able to use the trucks to make deliveries for Autumn.

95. Defendants knew that they had made false representations to Plaintiff and members of the proposed Class, and they made these false representations in order to induce Plaintiff and members of the proposed Class to enter into the lease-to-own agreements, pay initial deposits on the trucks, and to make weekly payments to ESSAR under this agreement.

96. Plaintiff and members of the proposed Class reasonably relied on Defendants' misrepresentations, and were led to believe that, if they continued to make payments toward the trucks, they would be able to use the trucks as they chose, and would eventually own the trucks outright.

97. Plaintiff and members of the proposed Class have suffered damages including, but not limited to, the initial deposit payments and amounts of the weekly payments they made toward the trucks under the lease-to-own agreement.

**COUNT VII**
**UNJUST ENRICHMENT**

**(INDIVIDUAL AND CLASS ACTION)**

98. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

99. Defendant ESSAR was unjustly enriched by inequitably retaining sums of money paid by Plaintiff and members of the proposed Class as deposits and weekly payments on vehicles while preventing Plaintiff and members of the proposed Class from continuing to make payments sufficient to satisfy the conditions necessary to achieve the option to purchase such vehicles or continue to lease said vehicles.

**COUNT VIII**
**VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT**
**MINN. STAT. § 325F.68 *ET SEQ.***
**(INDIVIDUAL AND CLASS ACTION)**

100. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

101. Defendants ESSAR and Autumn engaged in fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of vehicles to Plaintiff and the proposed Class.

**COUNT IX**
**VIOLATION OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT**
**MINN. STAT. § 325D.43 *ET SEQ.***
**(INDIVIDUAL AND CLASS ACTION)**

102. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

103. Defendants ESSAR and Autumn engaged in deceptive trade practices, as defined in the Act, by causing a likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another.

104. Defendants ESSAR and Autumn also engaged in deceptive trade practices, as defined in the Act, by advertising goods or services with intent not to sell them as advertised.

105. Defendants ESSAR and Autumn also engaged in deceptive trade practices, as defined in the Act, by making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

106. Defendants ESSAR and Autumn also engaged in deceptive trade practices, as defined in the Act, by engaging in unfair methods of competition, or unfair or unconscionable acts or practices.

107. Defendants ESSAR and Autumn also engaged in deceptive trade practices, as defined in the Act, by engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

## PRAYER FOR RELIEF

Plaintiff, the proposed Rule 23 Classes, and those who join this action, pray that the Court grant the following relief:

a. An order granting certification of this case as an FLSA collective action and permitting notice to be sent to the putative collective members;

b. An order certifying the Minnesota Classes pursuant to Rule 23;

c. An award of damages for all unpaid wages, expenditures, costs, deductions, benefits, or other losses resulting from Defendant Autumn's misclassification, as described above;

d. Statutory liquidated damages and penalties, pursuant to the FLSA and state law;

e. Injunctive relief pursuant to the Minnesota Consumer Fraud Act, alleged in Count VIII as described above.

f. Attorneys' fees and costs; and

g. Such other legal and equitable relief as the Court deems just and proper.

Dated: December 12, 2025

s/ Adam W. Hansen
Adam W. Hansen (#0391704)
APOLLO LAW LLC
333 Washington Avenue North, Suite 300
Minneapolis, MN 55401
(612) 927-2969
adam@apollo-law.com

Harold L. Lichten, *pro hac vice anticipated*
Oleana Savytska, *pro hac vice anticipated*
Jack Bartholet, *pro hac vice anticipated*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116

(617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com
jbartholet@llrlaw.com